## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "**Agreement**") dated April 30, 2021, is entered into by and among:  Robert "Bob" Gross ("**Bob Gross**"); Melodie Gross; AK Meritage Companies, LLC ("**Original Meritage**"); RB Enterprises, LLC, as debtor and debtor in possession ("**RB Enterprises**"); IT, LLC ("**IT, LLC**"); Bistro IT, LLC ("**Bistro IT**"); Meritage Management Company, LLC f/k/a Meritage Real Estate Advisors, LLC ("**Meritage Management**"); Jack A. Barrett, as debtor and debtor in possession ("**Jack Barrett**"); Dawn E. Barrett; Meritage Companies, LLC, as debtor and debtor in possession ("**New Meritage**"); Mystery Ranch, LLC ("**Mystery Ranch**"); Mountain Vista Trails, LLC ("**Mountain Vista**"); and NOC 1700, LLC ("**NOC 1700**").  The foregoing parties to this Agreement are collectively referred to as the "Parties" and individually as a "Party."

## RECITALS

**A.**      In 2014, Jack Barrett and Mystery Ranch commenced an action against Bob Gross and RB Enterprises in the Alaska Superior Court designated as *Mystery Ranch, LLC v. Gross*, Case No. 3AN-14-08418 (Alaska Sup. Ct. 2014) (the "**Alaska Mystery Ranch Action**"), which was referred to arbitration before the American Arbitration Association as Case No. 01-15-0005-1171 (the "**Alaska Mystery Ranch Arbitration**").

**B.**      In 2015, Jack Barrett and New Meritage commenced an action against Bob Gross and Original Meritage in the Alaska Superior Court designated as *Meritage Companies, LLC v. Gross*, Case No. 3AN-15-08320 (Alaska Sup. Ct. 2015) (the "**Alaska Meritage Action**").

**C.**      In connection with the Alaska Meritage Action, in 2015 Bob Gross commenced an action in the Utah District Court designated as *Meritage Companies, LLC v. AK Meritage Companies, LLC*, Case No. 150906138 (Utah Dist. Ct. 2015).  In 2016, New Meritage commenced an action against Bob Gross and Original Meritage in the Utah District Court designated as *AK Meritage Companies, LLC v. Meritage Companies,* LLC, Case No. 160906412 (Utah Dist. Ct. 2016).  Finally, in 2020, Dawn Barrett and Mountain Vista commenced an action against Original Meritage and others designated as *Mountain Vista Trails, LLC v. AK Meritage Companies, LLC*, Case No. 200902574 (Utah Dist. Ct. 2020).  The foregoing actions in this recital are collectively referred to as the "**Utah Actions**".

**D.**      In 2020, New Meritage filed a voluntary bankruptcy petition commencing its chapter 11 case in the United States Bankruptcy Court, District of Arizona (the "**Arizona Bankruptcy Court**") designated as *In re Meritage Companies, LLC*, Case No. 2:20-bk-07718-MCW (Bankr. D. Ariz.) (the "**Meritage Bankruptcy Case**").

**E.**      In 2020, Jack Barrett filed a voluntary bankruptcy petition commencing his chapter 11 bankruptcy case in the Arizona Bankruptcy Court designated as *In re Barrett*, Case No. 2:20-bk-07712-MCW (Bankr. D. Ariz.) (the "**Barrett Bankruptcy Case**").

**F.**      In connection with the Barrett Bankruptcy Case, in 2020 Bob Gross and Original Meritage filed an adversary proceeding complaint against Jack Barrett and Dawn Barrett seeking a determination of dischargeability of debt in the Barrett Bankruptcy Case designated as *Gross v.*

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**                **EXHIBIT A**

*Barrett*, Adv. Proc. No. 2:20-ap-00280-MCW (Bankr. D. Ariz.) (the "**Barrett Adversary Proceeding**").

G.      In 2021, RB Enterprises filed a voluntary bankruptcy petition commencing its chapter 11 bankruptcy case in the United States Bankruptcy Court, District of Alaska (the "**Alaska Bankruptcy Court**") designated as *In re RB Enterprises, LLC*, Case No. 21-00040 (Bankr. D. Ak. 2021) (the "**RB Bankruptcy Case**").

H.      In connection with the Alaska Meritage Action, Bob Gross and Original Meritage obtained a jury verdict against Jack Barrett and New Meritage finding Jack Barrett and New Meritage liable to Bob Gross and Original Meritage (the "**Jury Verdict**").   The Arizona Bankruptcy Court granted relief from the automatic stay to permit the damages phase of the trial to conclude in the Alaska Superior Court.

I.      In connection with the Alaska Mystery Ranch Action, Jack Barrett and Mystery Ranch obtained an arbitration award against RB Enterprises and in favor of Mystery Ranch, that was reduced to a judgment, which was stayed as to RB Enterprises by the commencement of the RB Bankruptcy Case.

J.      On March 17, 2021, the Parties participated in a global mediation session before the Honorable Daniel P. Collins, United States Bankruptcy Judge, District of Arizona, and reached a resolution of all of the claims, counterclaims and contested matters asserted between the Parties. The terms of the settlement were read into the record as reflected by the (1) the Minute Entry entered as Docket No. 292 by Judge Collins in the Barrett Bankruptcy Case, and (2) the Minute Entry entered as Docket No. 311 by Judge Collins in Meritage Bankruptcy Case (collectively, the "**Settlement**").   The Parties and their counsel agreed on the record to the terms of the Settlement at the conclusion of the mediation session.

K.      Bob Gross, Melodie Gross, Original Meritage, and RB Enterprises (collectively, the "**Gross Parties**"), on the one hand, and Jack Barrett, Dawn Barrett, New Meritage, Mystery Ranch, Mountain Vista, and NOC 1700 (collectively, the "**Barrett Parties**"), after consultation with their respective legal counsel, have made their own independent assessment of:

1.      the merits and potential value of:  (i) the claims asserted or the contested matters pursued by certain of the Gross Parties against Jack Barrett and New Meritage in the Alaska Meritage Action, the Meritage Bankruptcy Case, and the Barrett Bankruptcy Case; (ii) the claims asserted by Bob Gross and Original Meritage against Jack Barrett and Dawn Barret in the Barrett Adversary Proceeding; (iii) the claims asserted by Jack Barrett and Mystery Ranch against Bob Gross and RB Enterprises in the Alaska Mystery Ranch Action, the Alaska Mystery Ranch Arbitration, and the RB Bankruptcy Case; (iv) the claims asserted or the contested matters pursued by Jack Barrett and New Meritage against Bob Gross and New Meritage in the Meritage Bankruptcy Case and the Barrett Bankruptcy Case; and (v) the claims and counter claims asserted by and among certain of the Gross Parties and certain of the Barrett Parties in the Utah Actions;

2.      the potential recovery for any judgment that may be entered in favor of either the Gross Parties or the Barrett Parties, as the case may be, in the Alaska Meritage

Action, the Alaska Mystery Ranch Action, the Alaska Mystery Ranch Arbitration, the Meritage Bankruptcy Case, the Barrett Bankruptcy Case, the Barrett Adversary Proceeding, the Utah Actions, or the RB Bankruptcy Case; and

       3.    the estimated amount of time and expense involved in achieving a favorable result against either the Gross Parties or the Barrett Parties, as the case may be, and the risks and associated costs of achieving such a favorable result, in the Alaska Meritage Action, the Alaska Mystery Ranch Action, the Alaska Mystery Ranch Arbitration, the Meritage Bankruptcy Case, the Barrett Bankruptcy Case, the Barrett Adversary Proceeding, the Utah Actions, or the RB Bankruptcy Case.

Based upon this independent assessment, the Gross Parties and the Barrett Parties each believe that the settlement set forth in this Agreement reflects a full and fair compromise of the foregoing claims, contested matters and actions between the Parties, and that the settlement set forth in this Agreement constitutes reasonably equivalent value for the compromise and settlement of the foregoing claims, contested matters and actions between the Parties.

      **L.**    As a result of the negotiations between the Parties, and expressly without any admission of liability, the Parties now desire to compromise, settle and resolve all claims, disputes and differences between them as set forth in this Agreement.

### AGREEMENT

In consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

**1. Recitals.**

    1.1.    The Recitals are incorporated herein by this reference and the Parties agree that the information recited above is true and correct.

**2.    Terms of Settlement.**

    2.1.    <u>Scope of the Settlement</u>.  The Settlement consists of:  (A) the settlement of (i) all claims asserted by Bob Gross and Original Meritage against Jack Barrett and New Meritage in the Alaska Meritage Action, the Meritage Bankruptcy Case, and the Barrett Bankruptcy Case; (ii) all claims asserted by Bob Gross and Original Meritage against Jack Barrett and Dawn Barrett in the Barrett Adversary Proceeding; (iii) all claims asserted by Jack Barrett and Mystery Ranch against Bob Gross or RB Enterprises in the Alaska Mystery Ranch Action and the Alaska Mystery Ranch Arbitration; (iv) all claims asserted by and among Jack Barrett, Dawn Barrett, Mountain Vista, Mystery Ranch, Original Meritage, New Meritage and Bob Gross in the Utah Actions; (B) the transfer of Mystery Ranch's ownership in IT, LLC and Bistro IT to RB Enterprises; and (C) the dismissal of the Barrett Adversary Proceeding, the Alaska Meritage Action, the Alaska Mystery Ranch Arbitration, the Alaska Mystery Ranch Action, the Utah Actions, and the RB Bankruptcy Case.

    2.2.    <u>Effective Date of the Settlement</u>.  The Settlement shall become effective on the date that the last of the orders of the Arizona Bankruptcy Court and the Alaska Bankruptcy Court

become final and non-appealable (the "**Effective Date**"). By way of illustration, if the Arizona Bankruptcy Court order approving this Agreement is entered on May 5, 2021 and the Alaska Bankruptcy Court order approving this Agreement is entered on May 10, 2021, then the Effective Date per Rule 8002(a)(1) of the Federal Rules of Bankruptcy Procedure would be May 24, 2021. If any of the orders approving this Agreement are stayed on appeal or otherwise, then the Parties shall confer on whether to waive the finality requirements of this Paragraph.

2.3.    Transfer and/or Dissolution of LLC Interests.

2.3.1.    Mystery Ranch shall unconditionally and irrevocably transfer all right, title and interest in and to its ownership interest in IT, LLC to RB Enterprises such that RB Enterprises shall become the sole owner and sole member of IT, LLC as of the Effective Date. A true and complete copy of the *Assignment and Transfer of the IT, LLC Membership Interest* is attached hereto as **Exhibit 1**. As part of this transfer, Mystery Ranch shall waive any rights it may have to any profit distributions or the return of any capital contributions as a result of its ownership interest in IT, LLC. As part of this transfer, RB Enterprises shall assume all responsibility for any liability or pass-through liability of IT, LLC arising from events occurring after the Effective Date and shall indemnify Mystery Ranch for such liability.

2.3.2.    Mystery Ranch shall unconditionally and irrevocably transfer all right, title and interest in and to its ownership interest in Bistro IT to RB Enterprises such that RB Enterprises shall become the sole owner and sole member of Bistro IT as of the Effective Date. A true and complete copy of the fully executed *Assignment and Transfer of the Bistro IT, LLC Membership Interest* is attached hereto as **Exhibit 2**. As part of this transfer, Mystery Ranch shall waive any rights it may have to any profit distributions or the return of any capital contributions as a result of its ownership interest in Bistro IT. As part of this transfer, RB Enterprises shall assume all responsibility for any liability or pass-through liability of Bistro IT arising from events occurring after the Effective Date and shall indemnify Mystery Ranch for such liability.

2.3.3.    Within thirty (30) days of the Effective Date (the "**Utility Transfer Deadline**"), Gross shall cause Meritage Management to terminate any utility contracts that Meritage Management has entered into on behalf of IT, LLC or the hotel commonly known as the Inlet Tower Hotel located in Anchorage, Alaska (the "**Inlet Tower Hotel**"). RB Enterprises, Bob Gross, and Jack Barrett agree to cooperate in the efforts to terminate such utility service. Thereafter, IT, LLC shall obtain new utility service for the Inlet Tower Hotel through itself or its designee. Any deposit held by a utility provider for the benefit of Meritage Management shall be remitted to IT, LLC or its designee. Following the earlier of (i) the completion of the transfer of the utilities or (ii) the Utility Transfer Deadline, Bob Gross shall file the *Articles of Dissolution* for Meritage Management attached hereto as **Exhibit 3** with the State of Alaska's Divisions of Corporations, Business and Professional Licensing to dissolve Meritage Management.

2.3.4.    Within ten (10) business days following the last of the orders dismissing the Alaska Meritage Action, the Alaska Mystery Ranch Action, the Alaska Mystery Ranch Arbitration, the Utah Actions, and the Barrett Adversary Proceeding becoming final and

non-appealable orders, Bob Gross shall file the *Articles of Dissolution* for Original Meritage attached hereto as **Exhibit 4** with the State of Alaska's Divisions of Corporations, Business and Professional Licensing to dissolve Original Meritage.

2.3.5.  To the extent any "partnership" could be deemed to still exist in any way between any of the Gross Parties and any of the Barrett Parties, such "partnership" is deemed terminated, such that it is the intention of the Gross Parties and the Barrett Parties that each will go their separate ways and shall have no business ventures between them.

2.4.    Transfer of Court Registry Funds.

2.4.1.  Jack Barrett and Mystery Ranch hereby stipulate and agree to the return of all of the funds held by the Alaska Superior Court in its court registry totaling approximately $380,000 in the Alaska Mystery Ranch Action to IT, LLC.  A true and complete copy of the fully executed *Stipulation re (1) Return of Alaska Mystery Ranch Action Registry Funds and (2) Dismissal of Alaska Mystery Ranch Action and Alaska Mystery Ranch Arbitration* and the *Order Approving Stipulation* are attached hereto as **Exhibit 5** and **Exhibit 6**, respectively.

2.4.2.  Jack Barrett and New Meritage hereby stipulate and agree to the return of all of the funds held by the Alaska Superior Court in its court registry totaling approximately $26,000 in the Alaska Meritage Action to Bob Gross or his designee.  A true and complete copy of the fully executed *Stipulation re (1) Return of Alaska Meritage Action Registry Funds and (2) Dismissal of Alaska Meritage Action* and the *Order Approving Stipulation* are attached hereto as **Exhibit 7** and **Exhibit 8**, respectively.

2.4.3.  New Meritage shall retain all of the escrow funds held by the Arizona Bankruptcy Court in its court registry totaling approximately $200,000 in the Meritage Bankruptcy Case.

2.5.    Dismissal of Claims and Actions.

2.5.1.  Dismissal of Alaska Meritage Action.  In exchange for the transfer of membership interests as set forth in Paragraphs 2.3.1 and 2.3.2, the LLC dissolutions as set forth in Paragraphs 2.3.3 and 2.3.4, and the transfer of registry funds as set forth in Paragraph 2.4, Bob Gross and Original Meritage shall dismiss their claims with prejudice against Jack Barrett and New Meritage in the Alaska Meritage Action as set forth in the above-referenced *Stipulation* and *Order* attached hereto as **Exhibit 7** and **Exhibit 8**, respectively.  Additionally, neither Bob Gross nor Original Meritage will oppose a motion by Jack Barrett or New Meritage seeking to seal the Jury Verdict in the Alaska Meritage Action.

2.5.2.  Dismissal of the Barrett Adversary Proceeding.  In exchange for the transfer of membership interests as set forth in Paragraphs 2.3.1 and 2.3.2, the LLC dissolutions as set forth in Paragraphs 2.3.3 and 2.3.4, and the transfer of registry funds as set forth in Paragraph 2.4, Bob Gross and Original Meritage shall dismiss their claims with prejudice against Jack Barrett and Dawn Barrett in the Barrett Adversary Proceeding.  A true and complete copy of the *Stipulation to Dismiss the*

*Barrett Adversary Proceeding* and the *Order Approving Stipulation* are attached hereto as **Exhibit 9** and **Exhibit 10**, respectively.

2.5.3.    Dismissal of the Alaska Mystery Ranch Action and the Alaska Mystery Ranch Arbitration.  In exchange for the transfer of membership interests as set forth in Paragraphs 2.3.1 and 2.3.2, the LLC dissolutions as set forth in Paragraphs 2.3.3 and 2.3.4, and the transfer of registry funds as set forth in Paragraph 2.4, Jack Barrett and Mystery Ranch shall dismiss their claims with prejudice against Bob Gross and RB Enterprises in the Alaska Mystery Ranch Action and the Alaska Mystery Ranch Arbitration as set forth in the above-referenced *Stipulation* and *Order* attached hereto as **Exhibit 5** and **Exhibit 6**, respectively.

2.5.4.    Dismissal of the Utah Actions.  In exchange for the transfer of membership interests as set forth in Paragraphs 2.3.1 and 2.3.2, the LLC dissolutions as set forth in Paragraphs 2.3.3 and 2.3.4, and the transfer of registry funds as set forth in Paragraph 2.4, each applicable Party shall dismiss with prejudice their claims with prejudice against any other applicable Party asserted in each of the Utah Actions.  A true and complete copy of the *Stipulation to Dismiss Claims in the 2016 Utah Action* and the related *Order Approving Stipulation* are attached hereto as **Exhibit 11** and **Exhibit 12**, respectively.  A true and complete copy of the *Stipulation to Dismiss Claims in the 2020 Utah Action* and the related *Order Approving Stipulation* are attached hereto as **Exhibit 13** and **Exhibit 14**, respectively.

2.5.5.    Dismissal of the RB Enterprises Bankruptcy Case.  In addition to obtaining approval of this Agreement from the Arizona Bankruptcy Court, RB Enterprises shall seek from the Alaska Bankruptcy Court: (i) the approval of this Agreement, and (ii) at the election of RB Enterprises, the dismissal of the RB Bankruptcy Case.  Neither Jack Barrett, Dawn Barrett, New Meritage, Mystery Ranch, nor Mountain Vista shall object to the dismissal of the RB Bankruptcy Case in the event that such dismissal is sought, nor shall they induce or encourage any other party to object.  A true and complete copy of the *Stipulation to Dismiss the RB Bankruptcy Case* and the *Order Approving Stipulation* are collectively attached hereto as **Exhibit 15** and **Exhibit 16**, respectively.

2.6.    Post-Closing Obligations.

2.6.1.    Following the transfer of interests as set forth in Paragraphs 2.3.1 and 2.3.2, Bob Gross and RB Enterprises shall use their best efforts to obtain a novation from the Alaska Housing Finance Corporation ("AHFC") for Mystery Ranch with respect to its co-obligation of the IT, LLC loan within sixty (60) days following the entry of the orders approving the Settlement by the Arizona Bankruptcy Court and the Alaska Bankruptcy Court becoming final and non-appealable.  In the event that they are not able to obtain such novation, Jack Barrett and Dawn Barrett shall be entitled to, but are not required to, take any and all necessary steps they deem necessary to dissolve Mystery Ranch.

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

2.6.2.   If there is any delay in the termination of Old Meritage, Jack Barrett and Bob Gross shall cooperate in the submission of the necessary paperwork to change the name of Original Meritage to a name that does not use the term "Meritage". Bob Gross, Melodie Gross, and their affiliated entities agree not to use the term "Meritage" for any current or future business ventures.

2.6.3.   Within ten (10) business days of the Effective Date, Bob Gross and/or Original Meritage will submit the paperwork necessary to transfer any internet domain names using the term "Meritage" to Jack Barrett or his designee.

2.6.4.   RB Enterprises shall provide to Mystery Ranch all documents of IT, LLC and Bistro IT as such records are kept in the ordinary course of business, that are reasonably necessary to the preparation of the tax returns of IT, LLC and Bistro IT until all final tax returns of IT, LLC or Bistro IT that impact Mystery Ranch have been filed with the IRS.  RB Enterprises shall provide to Mystery Ranch all documents of Meritage Management as such records are kept in the ordinary course of business, that are reasonably necessary to the preparation of the tax returns of Meritage Management until all final tax returns of Meritage Management that impact Jack Barrett have been filed with the IRS.

2.7.    <u>Obligations in the Bankruptcy Cases</u>.

2.7.1.   Bob Gross and Original Meritage shall file *Notices of Withdrawal* of their Proofs of Claim designated as Claim Nos. 5 and 6, respectively, on the Claims Registry for the Meritage Bankruptcy Case.  A true and complete copy of the Notices of Withdrawal are attached hereto **Exhibit 17** and **Exhibit 18**, respectively.

2.7.2.   Bob Gross and Original Meritage shall file *Notices of Withdrawal* of their Proofs of Claim designated as Claim Nos. 13 and 14, respectively, on the Claims Registry for the Meritage Bankruptcy Case.  A true and complete copy of the Notices of Withdrawal are attached hereto **Exhibit 19** and **Exhibit 20**, respectively.

2.7.3.   Bob Gross and Original Meritage shall file *Notices of Withdrawal* of (i) their objections to confirmation of Jack Barrett's chapter 11 plan in the Barrett Bankruptcy Case (Barrett Bankruptcy Case Docket No. 142), (ii) their objection to the interim fee application of Beth Przywojski in the Meritage Bankruptcy Case (Meritage Bankruptcy Case Docket No. 263), (iii) their pending subpoenas issued in the Meritage Bankruptcy Case, and (iv) their Motion to Quash Debtor's Subpoenas in the Meritage Bankruptcy Case.  Further, Bob Gross and Original Meritage shall refrain and forbear from filing further objections or motions in the Meritage Bankruptcy Case and the Barrett Bankruptcy Case and/or taking any position which is adverse to Jack Barrett or New Meritage within such proceedings.

2.7.4.   Jack Barrett and New Meritage shall file *Notices of Withdrawal* of (i)  their objections to the Proofs of Claim of Bob Gross and Original Meritage

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

(Barrett Bankruptcy Case Docket No. 134 and Meritage Bankruptcy Case Docket No. 141) in light of Bob Gross and Original Meritage's withdrawal of their Proofs of Claim, (ii) their pending subpoenas issued in the Meritage Bankruptcy Case, and (iii) their Motion to Quash Bob Gross and Original Meritage's Subpoenas in the Meritage Bankruptcy Case.

2.8.    Forbearance of Rights and Remedies.

2.8.1.    North Ogden Project.  Upon the Effective Date, the Gross Parties and their affiliated entities shall not assert any further claim or interest to the 66+ acre real estate project commonly known as Village at Prominence Point located in North Ogden, Utah (the "North Ogden Project"), and shall not interfere either directly or indirectly with the business operations or the development of the North Ogden Project and shall file no further lis pendens or other form of lien with respect to the North Ogden Project.  In connection with the release of the constructive trust interest in the North Ogden Project of which Bob Gross and Original Meritage are beneficiaries, New Meritage shall assume all responsibility for any liability related to the North Ogden Project arising from events occurring after the Effective Date and shall indemnify Bob Gross and Original Meritage only in their capacity as beneficiaries under the constructive trust for such liability.

2.8.2.    Inlet Tower Hotel.  Upon the Effective Date, the Barrett Parties and their affiliated entities shall not assert any further claim to or interfere either directly or indirectly with (i) the Inlet Tower Hotel, (ii) IT, LLC or (iii) Bistro IT or the business operations of the foregoing. In connection with the transfer of Mystery Ranch's interest in IT, LLC and Bistro IT, RB shall assume all responsibility for any liability related to IT, LLC or Bistro IT arising from events occurring after the Effective Date and shall indemnify Mystery Ranch for such liability.

2.8.3.    Meritage Bankruptcy Case.  The Gross Parties agree that they will not assert any further claim of any sort in the Meritage Bankruptcy Case (and shall not induce any third parties from doing so) related to any claims arising from and after the Effective Date.  The Gross Parties agree to refrain and forbear (and shall not induce any third party) from taking any positions in the Meritage Bankruptcy Case which are adverse to the Barrett Parties within such proceeding unless excused from this prohibition under the terms of this Agreement.  The Barrett Parties agree to refrain and forbear (and shall not induce any third party) from taking any positions in the Meritage Bankruptcy Case which are adverse to the Gross Parties within such proceedings unless excused from such prohibition under the terms of this Agreement.

2.8.4.    Barrett Bankruptcy Case.  The Gross Parties agree that they will not assert any further claim of any sort in the Barrett Bankruptcy Case (and shall not induce any third parties from doing so) related to any claims arising from and after the Effective Date.  The Gross Parties agree to refrain and forbear (and shall not induce any third party) from taking any positions in the Barrett Bankruptcy Case which are adverse to the Barrett Parties within such proceeding unless excused from

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

this prohibition under the terms of this Agreement. The Barrett Parties agree to refrain and forbear (and shall not induce any third party) from taking any positions in the Barrett Bankruptcy Case which are adverse to the Gross Parties within such proceedings unless excused from such prohibition under the terms of this Agreement.

2.8.5. <u>RB Bankruptcy Case</u>. The Barrett Parties agree that they will not assert any further claim of any sort in the RB Bankruptcy Case (and shall not induce any third parties from doing so) related to any claims arising from and after the Effective Date. The Barrett Parties agree to refrain and forbear (and shall not induce any third party) from taking any position in the RB Bankruptcy Case which are adverse to the Gross Parties within that proceeding unless excused from this prohibition under the terms of this Agreement. The Gross Parties agree to refrain and forbear (and shall not induce any third party) from taking any position in the RB Bankruptcy Case which are adverse to the Barrett Parties within that proceeding unless excused from this prohibition under the terms of this Agreement.

2.9. <u>No Admission of Liability</u>. This Agreement is for the sole purpose of settling the matters described herein. It is expressly understood and agreed that this Agreement does not constitute and is not evidence of any admission by any of the Parties hereto of any liability or the truth of any allegations whatsoever.

**3. Timing of Settlement Obligations and Dismissal of Actions.**

3.1. <u>Execution of Exhibits</u>. All documentation necessary to carry out the terms of the Settlement attached hereto as Exhibits shall be fully executed contemporaneously with the execution of this Agreement and jointly held in escrow by Guidant Law, as counsel for the Barrett-related parties, and Buchalter, a Professional Corporation, as counsel for the Gross-related parties. In connection with the execution of the Agreement, counsel for the Parties will share evidence of execution of all Exhibits via Zoom with counsel for the other parties. On the fifteenth (15th) calendar day (that is not a weekend or legal holiday) following the entry of the last order of either the Arizona Bankruptcy Court or the Alaska Bankruptcy Court approving this Settlement, Mr. D. Lamar Hawkins, Mr. Patrick F. Keery, Ms. Nancy Swift and Mr. Anthony J. Napolitano shall meet and confer that each order of the Arizona Bankruptcy Court and the Alaska Bankruptcy Court approving this Settlement is a final and non-appealable order for purposes of establishing the Effective Date. Upon mutual confirmation in writing of the occurrence of the Effective Date by the aforementioned counsel, the executed documents shall be deemed released and the Parties shall proceed with filing such documents as contemplated by this Agreement. In the event the Parties cannot agree on whether the Effective Date has occurred, the Parties shall resolve such dispute in accordance with Paragraph 12.6.2 of this Agreement.

3.2. <u>Notices of Conditional Settlement</u>. On or before March 24, 2021, Bob Gross and Original Meritage shall file *Notices of Conditional Settlement* in the Alaska Meritage Action, the Alaska Mystery Ranch Action, the Utah Actions, the Meritage Bankruptcy Case, the Barrett Bankruptcy Case, the Barrett Adversary Proceeding, and the RB Bankruptcy Case.

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

3.3.    <u>Release of Lis Pendens</u>.  On or before March 19, 2021, Bob Gross and Original Meritage shall record a release of the lis pendens recorded in connection with the Utah Actions per the terms of the Settlement assented to by the Parties on the record in the Arizona Bankruptcy Court before Hon. Daniel P. Collins on March 17, 2021.

3.4.    <u>Bankruptcy Court Approval</u>.  Immediately following execution of this Agreement, Bob Gross, Original Meritage, Jack Barrett and New Meritage shall file joint motions under Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking the approval of this Agreement by the Arizona Bankruptcy Court in the Barrett Bankruptcy Case and the Meritage Bankruptcy Case. Immediately following execution of this Agreement, RB Enterprises shall file a motion under Rule 9019 of the Federal Rules of Bankruptcy Procedure seeking the approval of this Agreement by the Alaska Bankruptcy Court in the RB Bankruptcy Case.  All such motions shall be heard on the first available hearing date for the Parties and counsel.  The settlement motion in the Barrett Bankruptcy Case shall also seek authorization under Rule 7041 of the Federal Rules of Bankruptcy Procedure for the dismissal of the claims of Bob Gross and Original Meritage under 11 U.S.C. § 727 objecting to the discharge of Jack Barrett in the Barrett Bankruptcy Case and the Barrett Adversary Proceeding.

3.5.    <u>Transfer of Interests</u>.  On the Effective Date, the following transfers shall be effective:  (i) Mystery Ranch's interest in IT, LLC under Paragraph 2.3.1 of this Agreement, and (ii) Mystery Ranch's interest in Bistro IT under Paragraph 2.3.2 of this Agreement.

3.6.    <u>Dismissal of Actions and Transfer of Court Registry Funds</u>.  Within five (5) business days of the Effective Date:

      3.6.1.   Bob Gross, Original Meritage, Jack Barrett and New Meritage shall file in the Alaska Meritage Action the *Stipulation for Dismissal of the Alaska Meritage Action* required under Paragraph 2.5.1 of this Agreement and the related transfer of court registry funds to Bob Gross required under Paragraph 2.4.2 of this Agreement.

      3.6.2.   Bob Gross, RB Enterprises, Jack Barrett and Mystery Ranch shall file in the Alaska Mystery Ranch Action and the corresponding Alaska Mystery Ranch Arbitration the *Stipulation for Dismissal of the Alaska Mystery Ranch Action and the Alaska Mystery Ranch Arbitration* required under Paragraph 2.5.3 of this Agreement and the related transfer of court registry funds under Paragraph 2.4.1. of this Agreement

      3.6.3.   Bob Gross and Original Meritage shall file in the Barrett Adversary Proceeding the *Stipulation to Dismiss the Barrett Adversary Proceeding* required under Paragraph 2.5.2. of this Agreement.

      3.6.4.   At RB Enterprises' election, RB Enterprises may file in the RB Bankruptcy Case the *Stipulation to Dismiss the RB Bankruptcy Case* required under Paragraph 2.5.5 of this Agreement.

3.7.    <u>Withdrawal of Proofs of Claims and Contested Matters</u>.  Within five (5) business days of the Effective Date:

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

      3.7.1.   Bob Gross and Original Meritage shall withdraw their respective Proofs of Claim filed in the Meritage Bankruptcy Case as required under Paragraph 2.7.1. of this Agreement.

      3.7.2.   Bob Gross and Original Meritage shall withdraw their respective Proofs of Claim filed in the Barrett Bankruptcy Case as required under Paragraph 2.7.2. of this Agreement.

      3.7.3.   Bob Gross and Original Meritage shall file *Notices of Withdrawal* of the documents specified in Paragraph 2.7.3. of this Agreement.

      3.7.4.   Jack Barrett and New Meritage shall file *Notices of Withdrawal* of the documents specified in Paragraph 2.7.4 of this Agreement.

## 4.     Representations and Warranties.

4.1.   <u>Authority to Execute Agreement</u>.  Each Party represents and warrants that it has the full power and authority to sign and enter into this Agreement and related settlement documents, to undertake and consummate the transactions contemplated hereby, and to pay, perform and observe all of the conditions, covenants, agreements and obligations contained herein.

4.2.   <u>Advice of Counsel</u>.  Each Party represents and warrants that it has received the advice of attorneys of their own choosing in connection with the evaluation and execution of this Agreement.

4.3.   <u>No Prior Transfers of Released Items</u>.  Each Party represents and warrants that it has not heretofore sold, assigned, transferred, encumbered, conveyed or otherwise disposed of, including by way of subrogation, any of the charges, claims, complaints, actions, causes of action, liabilities, obligations, promises, benefits, agreements, controversies, rights, damages, debts, costs, losses of services, attorneys' fees, expenses, costs and compensation of any nature whatsoever released in this Agreement.

4.4.   <u>Reliance on Independent Investigation</u>.  Each Party represents and warrants that it has entered into this Agreement in reliance on its own independent investigations and analysis of the facts underlying the subject matter of this Agreement, no representations, warranties, or promises of any kind have been made directly or indirectly to induce them to execute this Agreement other than those that are expressly set forth herein.

4.5.   <u>No Frustration of Purpose.</u>  Each Party represents and warrants that it will not take any action, which would tend to defeat the intent, purposes or provisions of this Agreement.

4.6.   <u>Mystery Ranch Representations and Warranties</u>.

      4.6.1.   Mystery Ranch represents and warrants that it owns all right, title and interest in and to its interests in IT, LLC free and clear of all liens, encumbrances or other interests and has not transferred, assigned or conveyed its interest in IT, LLC, which representations and warranties shall be true as of the effective date of the transfer.

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

4.6.2.   Mystery Ranch represents and warrants that it owns all right, title and interest in and to its interests in Bistro IT free and clear of all liens, encumbrances or other interests and has not transferred, assigned or conveyed its interest in Bistro IT, which representations and warranties shall be true as of the effective date of the transfer.

4.7.   <u>IT, LLC, Bistro IT, Meritage Management Representations and Warranties</u>.

4.7.1.   IT, LLC, Bistro IT, Meritage Management represent and warrant that each entity is current on its respective obligations to third-parties and that each entity intends to remain current on its respective obligations.

4.8.   <u>No Additional Representations</u>.   Except for the representations and warranties expressly set forth in this Agreement, each Party acknowledges that he/she/it has relied wholly upon his/her/its own judgment, belief and knowledge of the existence, nature and extent of each claim, demand or cause of action that he/she/it/they may have against the other Party, which is to be released pursuant to this Agreement and that he/she/it/they has not been influenced to any extent in entering into this Agreement by any representation or statement regarding any such claim, demand or cause of action made by any other Party (except as expressly set forth in this Agreement).

4.9.   <u>No Other Inducement</u>.   Each Party acknowledges and represents to the other Party that no promise, representation or inducement not expressed herein has been made in connection with this Agreement.

**5.      Post-Settlement Litigation Covenants.**

5.1.   Jack Barrett, Dawn Barrett, New Meritage, Mystery Ranch, Mountain Vista, and NOC 1700 agree not to commence any action against Bob Gross, Melodie Gross, Original Meritage, RB Enterprises, IT, LLC, Bistro IT, Meritage Management seeking to avoid, set aside or unwind the transactions contemplated by this Settlement including, without limitation, the transfer of the ownership interests in IT, LLC or Bistro IT.

5.2.   Jack Barrett, Dawn Barrett, New Meritage, Mystery Ranch, Mountain Vista, and NOC 1700 agree not to induce or solicit any other entity or person to commence any action against Bob Gross, Melodie Gross, Original Meritage, RB Enterprises, IT, LLC, Bistro IT, or Meritage Management seeking to avoid, set aside or unwind the transactions contemplated by this Settlement including, without limitation, the transfer of the ownership interests in IT, LLC or Bistro IT.

5.3.   Bob Gross, Melodie Gross, Original Meritage, RB Enterprises, IT, LLC, Bistro IT, Meritage Management agree not commence any action against Jack Barrett, Dawn Barrett, New Meritage, Mystery Ranch, Mountain Vista or NOC 1700 seeking to avoid, set aside or unwind the transactions contemplated by this Settlement.

5.4.   Bob Gross, Melodie Gross, Original Meritage, RB Enterprises, IT, LLC, Bistro IT, Meritage Management agree not to induce or solicit any other entity to commence any action

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

against Jack Barrett, Dawn Barrett, New Meritage, Mystery Ranch, Mountain Vista or NOC 1700 seeking to avoid, set aside or unwind the transactions contemplated by this Settlement.

## 6.    Conditions Precedent.

6.1.    The conditions precedent for the effectiveness of this Agreement requires: (1) the confirmation by counsel for their respective parties that all signature pages of all Exhibits to this Agreement that are required to be signed have been signed contemporaneously with the execution of this Agreement; and (2) the entry of final and non-appealable orders approving this Agreement by the Arizona Bankruptcy Court and the Alaska Bankruptcy Court.

## 7.    Release by the Barrett Related Parties.

7.1.    Except for the obligations under this Agreement, and subject to the entry of the last order by the Arizona Bankruptcy Court and the Alaska Bankruptcy Court becoming a final and non-appealable order, each of Jack Barrett, Dawn Barrett, New Meritage, Mystery Ranch, Mountain Vista, and NOC 1700, and each of their respective successors, assignors, assigns, present and former affiliates, parents, subsidiaries, divisions and merged or acquired companies and operations and their respective past or present directors, officers, partners, members, managers, employees, independent contractors, agents, attorneys and professionals (the "Barrett Releasing Parties") hereby releases and forever discharges Bob Gross, Melodie Gross, Original Meritage, RB Enterprises, IT, LLC, Bistro IT, and Meritage Management and each of their respective agents, servants, employees, accountants, attorneys, shareholders, subsidiaries, officers, directors, heirs, executors, administrators, insurers, successors and assigns (the "Gross Released Parties") from any and all claims, demands, liabilities, accounts, obligations, costs, expenses, liens, actions, causes of action, rights to indemnity (legal or equitable), rights to subrogation, rights to contribution and remedies of any nature whatsoever, known or unknown, which each of the Barrett Releasing Parties had, now has, or has acquired, individually or jointly, arising from any facts, actions or inactions occurring at any time prior to the date of the execution of this Agreement in any way related to, arising from, or concerning any of the allegations or issues in the Alaska Meritage Action, the Alaska Mystery Ranch Action, the Alaska Mystery Ranch Arbitration, the Utah Actions, the Meritage Bankruptcy Case, the Barrett Bankruptcy Case, the Barrett Adversary Proceeding, or the RB Bankruptcy Case, including specifically, but not exclusively, and without limiting the generality of the foregoing, any and all of the claims, damages, demands and causes of action, known or unknown, suspected or unsuspected by each of the Barrett Releasing Parties (collectively, the "Barrett Released Claims").

7.2.    In furtherance of the releases given in Paragraphs 7.1 above, the Barrett Releasing Parties each acknowledge that they have been advised of, and are familiar with, the decisions of the Alaska Supreme Court respecting releases, and specifically state that it is still their intention, and it is a purpose of this Agreement, to discharge absolutely the liability of the other for any and all claims arising out of the matters described herein, and the Barrett Releasing Parties each acknowledge and assume all risk, chance or hazard that the damages suffered may be different, or greater or more extensive than is now known, anticipated or expected. The Barrett Releasing Parties each specifically waive any right they may now or hereafter have to reform, rescind, modify or set aside the releases given above due to a mutual or unilateral mistake or otherwise. The risk of such uncertainty and mistake is expressly assumed by each of the Barrett Releasing Parties in

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

view of the consideration and mutual releases given.  The Barrett Releasing Parties similarly waive and relinquish all rights and benefits afforded by any other similar state law providing that a general release does not extend to claims that the releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that if known by him or her would have materially affected his or her settlement with the debtor or the released party.

7.3.    Each of the Barrett Releasing Parties further acknowledge and agree that it may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the Barrett Released Claims they may have, but that nonetheless it is each of the Barrett Releasing Parties' intention to fully, finally and forever settle and release all claims, whether known, unknown, fixed, contingent, suspected, unsuspected, or otherwise as to the Barrett Released Claims.

7.4.    The release given by the Barrett Releasing Parties shall be null and void in the event that the Gross Released Parties take any action seeking to avoid, set aside or unwind the transactions contemplated by this Settlement, and the Barrett Releasing Parties shall be allowed to reinstitute any proceeding previously dismissed including, without limitation, the Alaska Mystery Ranch Arbitration, the Alaska Mystery Ranch Action, and the Utah Actions.

## 8.    Release by the Gross Related Parties.

8.1.    Except for the obligations under this Agreement, and subject to the entry of the last order by the Arizona Bankruptcy Court and the Alaska Bankruptcy Court becoming a final and non-appealable order, each of Bob Gross, Melodie Gross, Original Meritage, RB Enterprises, IT, LLC, Bistro IT, Meritage Management, and each of their respective successors, assignors, assigns, present and former affiliates, parents, subsidiaries, divisions and merged or acquired companies and operations and their respective past or present directors, officers, partners, members, managers, employees, independent contractors, agents, attorneys and professionals (the "Gross Releasing Parties") hereby releases and forever discharges Jack Barrett, Dawn Barrett, New Meritage, Mystery Ranch, Mountain Vista, NOC 1700, IT, LLC, Bistro IT, and Meritage Management and each of their respective agents, servants, employees, accountants, attorneys, shareholders, subsidiaries, officers, directors, heirs, executors, administrators, insurers, successors and assigns (the "Barrett Released Parties") from any and all claims, demands, liabilities, accounts, obligations, costs, expenses, liens, actions, causes of action, rights to indemnity (legal or equitable), rights to subrogation, rights to contribution and remedies of any nature whatsoever, known or unknown, which each of the Barrett Releasing Parties had, now has, or has acquired, individually or jointly, arising from any facts, actions or inactions occurring at any time prior to the date of the execution of this Agreement in any way related to, arising from, or concerning any of the allegations or issues in the Alaska Meritage Action, the Alaska Mystery Ranch Action, the Alaska Mystery Ranch Arbitration, the Utah Actions, the Meritage Bankruptcy Case, the Barrett Bankruptcy Case, the Barrett Adversary Proceeding, or the RB Bankruptcy Case, including specifically, but not exclusively, and without limiting the generality of the foregoing, any and all of the claims, damages, demands and causes of action, known or unknown, suspected or unsuspected by each of the Gross Releasing Parties (collectively, the "Gross Released Claims").

8.2.    In furtherance of the releases given in Paragraph 8.1 above, the Gross Releasing Parties each acknowledge that they have been advised of, and are familiar with, the decisions of

the Alaska Supreme Court respecting releases, and specifically state that it is still their intention, and it is a purpose of this Agreement, to discharge absolutely the liability of the other for any and all claims arising out of the matters described herein, and the Gross Releasing Parties each acknowledge and assume all risk, chance or hazard that the damages suffered may be different, or greater or more extensive than is now known, anticipated or expected.  The Gross Releasing Parties each specifically waive any right they may now or hereafter have to reform, rescind, modify or set aside the releases given above due to a mutual or unilateral mistake or otherwise.  The risk of such uncertainty and mistake is expressly assumed by each of the Gross Releasing Parties in view of the consideration and mutual releases given.  The Gross Releasing Parties similarly waive and relinquish all rights and benefits afforded by any other similar state law providing that a general release does not extend to claims that the releasing party does not know or suspect to exist in his or her favor at the time of executing the release, and that if known by him or her would have materially affected his or her settlement with the debtor or the released party.

8.3.    Each of the Gross Releasing Parties further acknowledge and agree that it may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the Gross Released Claims they may have, but that nonetheless it is each of the Gross Releasing Parties' intention to fully, finally and forever settle and release all claims, whether known, unknown, fixed, contingent, suspected, unsuspected, or otherwise as to the Gross Released Claims.

8.4.    The release given by the Gross Releasing Parties shall be null and void in the event that the Barrett Released Parties take any action seeking to avoid, set aside or unwind the transactions contemplated by this Agreement including, without limitation, the transfer of the ownership interests in IT, LLC and Bistro IT, and the Gross Releasing Parties shall be allowed to reinstitute any proceeding previously dismissed including, without limitation, the Barrett Adversary Proceeding, the Alaska Meritage Action, the Alaska Mystery Ranch Action, the Alaska Mystery Ranch Arbitration or the Utah Actions.

**9.    Attorneys' Fees and Costs.**

9.1.    Each Party shall bear its own attorneys' fees and costs in connection with the Alaska Meritage Action, the Alaska Mystery Ranch Action, the Alaska Mystery Ranch Arbitration, the Utah Actions, the Meritage Bankruptcy Case, the Barrett Bankruptcy Case, the Barrett Adversary Proceeding, and/or the RB Bankruptcy Case, the claims released and the preparation of this Agreement.  In the event of any default or breach of this Agreement, or any action brought to interpret or enforce the terms of this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs incurred in any such action.

**10.    Notices.**

10.1.    Whenever any Party is required or shall desire to give or serve upon any other Party any notice, demand, request or other communication, each such notice, demand, request or other communication shall be in writing delivered via certified U.S. Mail or via overnight courier (*e.g.*, FedEx or UPS) to the addresses set forth below:

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

To Robert "Bob" Gross:

Robert Gross
205 E Dimond Boulevard, No. 515
Anchorage, Alaska 99515
Telephone: (907) 360-3880

To Melodie Gross:

Melodie Gross
205 E Dimond Boulevard, No. 515
Anchorage, Alaska 99515
Telephone: (907) 360-3880

To AK Meritage Companies, LLC:

AK Meritage Companies, LLC
Attn: Robert Gross
205 E Dimond Boulevard, No. 515
Anchorage, Alaska 99515
Telephone: (907) 360-3880

To RB Enterprises, LLC:

RB Enterprises, LLC
Attn: Robert Gross
205 E Dimond Boulevard, No. 515
Anchorage, Alaska 99515
Telephone: (907) 360-3880

To IT, LLC:

IT, LLC
Attn: Robert Gross
205 E Dimond Boulevard, No. 515
Anchorage, Alaska 99515
Telephone: (907) 360-3880

To Bistro IT, LLC:

Bistro IT, LLC
Attn: Robert Gross
205 E Dimond Boulevard, No. 515
Anchorage, Alaska 99515
Telephone: (907) 360-3880

To Meritage Management Company, LLC:

Meritage Management Company, LLC
Attn: Robert Gross
205 E Dimond Boulevard, No. 515
Anchorage, Alaska 99515
Telephone: (907) 360-3880

with a copy to
(which shall not constitute notice):

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**
BN 44855356v18

| To Bankruptcy Counsel for Robert "Bob" Gross, Melodie Gross, AK Meritage Companies, LLC, and RB Enterprises, LLC: | Buchalter, a Professional Corporation<br>Attn:  Nancy K. Swift, Esq.<br>16435 North Scottsdale Road, Suite 440<br>Scottsdale, Arizona 85254-1754<br>Telephone: (408) 383-1804<br>nswift@buchalter.com |
|---|---|

and

Buchalter, a Professional Corporation
Attn:  Anthony J. Napolitano, Esq.
1000 Wilshire Boulevard, 15th Floor
Los Angeles, California 90017
Telephone: (213) 891-0700
anapolitano@buchalter.com

with a copy to
(which shall not constitute notice):

| To Litigation Counsel for Robert "Bob" Gross, Melodie Gross, AK Meritage Companies, LLC, and RB Enterprises, LLC: | Boyd, Chandler, Falconer & Munson, LLP<br>Attn:  Bruce Falconer, Esq.<br>911 West Eighth Avenue, Suite 302<br>Anchorage, Alaska 99501<br>Telephone:  (907) 272-8401<br>bfalconer@bcfaklaw.com |
|---|---|
| To Jack A. Barrett: | Jack A. Barrett<br>34806 North 80th Way<br>Scottsdale, Arizona 85262-1027<br>Telephone: (907) 229-8023 |
| To Dawn E. Barrett: | Dawn E. Barrett<br>34806 North 80th Way<br>Scottsdale, Arizona 85262-1027<br>Telephone: (907) 230-7362 |
| To Meritage Companies, LLC: | Meritage Companies, LLC<br>Attn:  Jack A. Barrett<br>34806 North 80th Way<br>Scottsdale, Arizona 85262-1027<br>Telephone: (907) 229-8023 |
| To Mystery Ranch, LLC: | Mystery Ranch, LLC<br>Attn:  Jack A. Barrett<br>34806 North 80th Way<br>Scottsdale, Arizona 85262-1027<br>Telephone: (907) 229-8023 |

- 17 -

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

To Mountain Vista Trails, LLC:

Mountain Vista Trails, LLC
Attn:  Dawn E. Barrett
34806 North 80th Way
Scottsdale, Arizona 85262-1027
Telephone: (907) 230-7362

To NOC 1700, LLC.:

NOC 1700, LLC
Attn:  Dawn E. Barrett
30 N Gould St. Suite N
Sheridan, WY 82801
Telephone: (907) 230-7362

with a copy to
(which shall not constitute notice):

To Bankruptcy Counsel for Jack Barrett and
Meritage Companies, LLC:

Guidant Law, PLC
Attn:  D. Lamar Hawkins, Esq.
402 East Southern Avenue
Tempe, Arizona 85282
Telephone: (602) 888-9229
lamar@guidant.law

with a copy to
(which shall not constitute notice):

To Litigation Counsel for Jack Barrett, Dawn
Barrett, Meritage Companies, LLC, Mystery
Ranch, LLC, and Mountain Vista Trails,
LLC:

Smith Knowles, PC
Attn:  M. Darrin Hammond, Esq.
2225 Washington Blvd., Suite 200
Ogden, Utah 84401
Telephone: (801) 476-0303
dhammond@smithknowles.com

with a copy to
(which shall not constitute notice):

To Counsel for Dawn Barrett, Mountain
Vista Trails, LLC and NOC 1700, LLC:

Keery McCue, PLLC
Attn:  Patrick F. Keery, Esq.
6803 E. Main Street, Suite 1116
Scottsdale, Arizona 85251
Telephone: (480) 478-0709
pfk@keerymccue.com

Service of any such notice, demand or request shall be deemed complete on the date of actual
delivery.  Copies of such notice, demand or request sent to counsel for a specific Party shall not
constitute notice to such Party.  Any Party may from time to time, by notice in writing served upon
the other Party designate a different mailing address or a different person or additional persons to
which all such notices, demand or requests are thereafter to be addressed.

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

**11.     Interpretation and Enforcement of Agreement.**

11.1.    <u>Entire Agreement</u>.  This Agreement is intended by the Parties as the entire, integrated and final expression of their agreement with respect to the subject matter hereof.  All prior understandings, negotiations, stipulations and provisions relating to the subject matter of this Agreement which preceded or may accompany the execution of this Agreement whether oral or written are hereby merged into this Agreement.

11.2.    <u>No Prejudice to Drafter</u>.  Each Party has had a full and ample opportunity to review this Agreement and to make suggestions or changes to it.  Accordingly, the Parties understand and agree that this Agreement is deemed to have been drafted jointly by the Parties, and the Parties agree that the common-law principles of construing ambiguities against the drafter shall have no application hereto.  This Agreement should be construed fairly and not in favor of or against one Party as the drafter hereof.

11.3.    <u>Further Assurances</u>.  The Parties hereto each agree to execute, acknowledge, verify, deliver, furnish, and to do or cause to be done all other acts and things at such times and in such form or substance as are reasonably necessary to effectuate the terms of this Agreement.

11.4.    <u>Severability</u>.  Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under all applicable laws and regulations.  If, however, any provision of this Agreement shall be prohibited by or invalid under any such law or regulation in any jurisdiction, it shall, as to such jurisdiction, be deemed modified to conform to the minimum requirements of such law or regulation, or, if for any reason it is not deemed so modified, it shall be ineffective and invalid only to the extent of such prohibition or invalidity without affecting the remaining provisions of this Agreement, or the validity or effectiveness of such provision in any other jurisdiction.

11.5.    <u>Survival</u>.  The covenants, releases and indemnifications contained in this Agreement shall survive the full performance of this Agreement.  In the event that any provision of this Agreement should be held to be void, voidable, unlawful or for any reason unenforceable, the remaining provisions or portion of this Agreement shall remain in full force and effect, unless such portion of the Agreement is so material that its deletion would violate the purpose and intent of the Parties.  This Agreement shall survive the conversion or dismissal of the Meritage Bankruptcy Case, the Barrett Bankruptcy Case and/or the RB Bankruptcy Case and shall be integrated into any Chapter 11 Plan filed in any of these cases.  Any such Chapter 11 Plan shall provide that the obligations of this Agreement shall survive the confirmation of such plan and shall not be discharged under such plan.  Any discrepancy between any such Chapter 11 Plan and this Agreement shall be resolved in favor of this Agreement.

11.6.    <u>Enforcement of Agreement</u>.

11.6.1.    The Parties specifically agree that, unless this Agreement is void *ab initio*:  (1) this Agreement is admissible as evidence and subject to disclosure in any enforcement proceedings, if enforcement is necessary; (2) all of the material terms of the settlement are set forth herein; (3) this Agreement is enforceable under Rule 58 of the Federal Rules of Civil Procedure, Rule 7058 of

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

the Federal Rules of Bankruptcy Procedure, Rule 58 of the Alaska Rules of Civil Procedure or other similar state laws, and the court, upon motion of either Party, may enter judgment pursuant to the terms hereof; and (4) neither Party shall oppose a motion under Rule 58 of the Federal Rules of Civil Procedure, Rule 7057 of the Federal Rules of Bankruptcy Procedure, Rule 58 of the Alaska Rules of Civil Procedure or other similar state laws to enter judgment pursuant to the terms of this Agreement on the ground that this Agreement is confidential or otherwise privileged.

11.6.2.    Judge Daniel P. Collins shall retain jurisdiction over this Settlement until the Effective Date and shall retain jurisdiction over all actions necessary to be taken by any Party to carry out the terms of this Agreement.  After the Effective Date and the and completion of those actions, Judge Madeleine Wanslee shall have jurisdiction regarding this Agreement and the order(s) approving the Agreement.  The Alaska Superior Court shall retain jurisdiction as necessary to enforce the terms of the Agreement with respect to issues solely within that court's jurisdiction.  The Utah District Court shall retain jurisdiction as necessary to enforce the terms of the Agreement solely with respect to issues within that court's jurisdiction.  The Alaska Bankruptcy Court shall retain jurisdiction as necessary to enforce the terms of the Agreement solely with respect to issues within that court's jurisdiction.

11.6.3.    The failure by any Party to enforce any term or provision of this Agreement shall not constitute a waiver of the right to enforce the same term or provision, or any other term or provision, thereafter.  No waiver by any Party of any term or provision of this Agreement shall be deemed or shall constitute a waiver of any other provision of this Agreement, whether or not similar, nor shall any such waiver constitute a continuing waiver unless otherwise expressly provided in writing.

11.7.    <u>Successors and Assigns</u>.  This Agreement, including the general releases contained herein, shall inure to the benefit and be binding on the Parties and, as applicable, their assigns, and their successors in interest, including successors in interest whether by purchase, merger, assignment or otherwise.

11.8.    <u>No Modification</u>.  This Agreement may not be amended or supplemented, nor may any rights hereunder be waived, except in a writing signed by each of the Parties hereto.

11.9.    <u>Headings</u>.  Headings contained in this Agreement are inserted as a matter of convenience and for reference, and are not intended and shall not be construed to define, limit, extend or otherwise describe the scope of this Agreement or any provision of this Agreement.

## 12.    Governing Law and Jurisdiction.

12.1.    <u>Governing Law</u>.  Without regard to the principles of choice of law or conflicts of law of the particular state or of any other jurisdiction, this Agreement shall be governed by (i) the laws of the State of Alaska with respect to any dispute related to the Inlet Tower Hotel, (ii) the

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

laws of the State of Utah with respect to any dispute related to the North Ogden Project, and (iii) the laws of the State of Arizona with respect to any dispute related to any other issue not covered under Paragraph 13.1(i) or (ii).

     12.2.  <u>Venue</u>.  The forum for resolution of any dispute arising out of this Agreement shall be (i)  the Alaska Superior Court, Third Judicial District at Anchorage with respect to any dispute related to the Inlet Tower Hotel, (ii) the Utah District Court with respect to any dispute related to the North Ogden Project, or (iii) the Arizona Bankruptcy Court, if either the Meritage Bankruptcy Case or the Barrett Bankruptcy Case have not been closed, or Arizona Superior Court, Maricopa County, for any other issue not covered by Paragraph 13.2 (i) or (ii).

**13.**     **Miscellaneous Provisions.**

     13.1.  <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute but one and the same Agreement.  Delivery of an executed counterpart of this Agreement by facsimile or electronic mail shall be equally as effective as delivery of a manually executed counterpart of this Agreement.  Any party delivering an executed counterpart of this Agreement by facsimile or electronic mail shall deliver a manually executed counterpart of this Agreement, but the failure to deliver a manually executed counterpart shall not affect the validity, enforceability, and binding effect of this Agreement.

     13.2.  <u>Electronic Signatures</u>.  The Parties shall be bound by their affixed signatures hereto which may be transmitted by facsimile or electronic mail (in .pdf format) as if such signatures were original "ink" signatures, in which case each one shall constitute an original.

     13.3.  <u>Time is of the Essence</u>.  The Parties hereto agree that time is of the essence for this Agreement and that it is of the utmost importance that all of the obligations hereunder be fully performed in strict accordance with the dates and times set forth herein.

     13.4.  <u>Cumulative Remedies</u>.  Any specific right or remedy set forth in this Agreement, legal, equitable or otherwise, shall not be exclusive, but shall be cumulative with all other rights or remedies set forth herein or allowed or allowable by law.

**[SIGNATURE PAGES FOLLOWS]**

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed as of the date first written above.

ROBERT "BOB" GROSS

By: _____
          Robert "Bob" Gross

MELODIE A. GROSS

By: _____
          Melodie A. Gross

RB ENTERPRISES, LLC, as debtor and
debtor in possession

By: _____
          Robert "Bob" Gross, as Manager and
          authorized representative

AK MERITAGE COMPANIES, LLC

By: _____
          Robert "Bob" Gross, as Manager and
          authorized representative

IT, LLC

By: _____
          Robert "Bob" Gross, as Manager and
          authorized representative

BISTRO IT, LLC

By: _____
          Robert "Bob" Gross, as Manager and
authorized representative of RB Enterprises,
LLC, a 50% member of Bistro IT, LLC

By: _____
          Jack A. Barrett, as Manager and
authorized representative of Mystery Ranch,
LLC, a 50% member of Bistro IT, LLC

JACK A. BARRETT

By: _____
          Jack A. Barrett, as debtor
          and debtor in possession

DAWN E. BARRETT

By: _____
          Dawn E. Barrett

MERITAGE COMPANIES, LLC, as debtor
and debtor in possession

By: _____
          Jack A. Barrett, as Manager and
          authorized representative

MYSTERY RANCH, LLC,

By: _____
          Jack A. Barrett, as Manager and
          authorized representative

MOUNTAIN VISTA TRAILS, LLC

By: _____
          Dawn E. Barrett, as Manager and
          authorized representative

MERITAGE MANAGEMENT COMPANY,
LLC

By: _____
          Robert "Bob" Gross, as Manager and
authorized representative of RB Enterprises,
LLC, a member of Meritage Management
Company, LLC

By: _____
          Jack A. Barrett, as 50% member of
Meritage Management Company, LLC

NOC 1700, LLC

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

By: _____
        Dawn E. Barrett, as authorized
        representative

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

BN 44855356v18

**Exhibit 1**

**Assignment and Transfer of the IT, LLC Membership Interest**

**Exhibit 2**


**Assignment and Transfer of the Bistro IT, LLC Membership Interest**

**Exhibit 3**

**Articles of Dissolution for Meritage Management Company, LLC**

**Exhibit 4**


**Articles of Dissolution for AK Meritage Companies, LLC**

**Exhibit 5**

**Stipulation re (1) Return of Alaska Mystery Ranch Action Registry Funds and
(2) Dismissal of Alaska Mystery Ranch Action and Alaska Mystery Ranch Arbitration**

**Exhibit 6**

**Order Approving Stipulation re (1) Return of Alaska Mystery
Ranch Action Registry Funds and (2) Dismissal of Alaska Mystery
Ranch Action and Alaska Mystery Ranch Arbitration**

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

BN 44855356v18

**Exhibit 7**

**Stipulation re (1) Return of Alaska Meritage Action
Registry Funds and (2) Dismissal of Alaska Meritage Action**

**Exhibit 8**

**Order Approving Stipulation re (1) Return of Alaska Meritage
Action Registry Funds and (2) Dismissal of Alaska Meritage Action**

**Exhibit 9**

**Stipulation to Dismiss the Barrett Adversary Proceeding**

**Exhibit 10**


**Order Approving Stipulation to Dismiss the Barrett Adversary Proceeding**

**Exhibit 11**

**Stipulation to Dismiss Claims in the 2016 Utah Action**

**Exhibit 12**

**Order Approving Stipulation to Dismiss Claims in the 2016 Utah Action**

**Exhibit 13**

**Stipulation to Dismiss Claims in the 2020 Utah Actions**

**Exhibit 14**


**Order Approving Stipulation to Dismiss Claims in the 2020 Utah Actions**

**Exhibit 15**

**Stipulation to Dismiss the RB Enterprises, LLC Bankruptcy Case**

BN 44855356v18

**Exhibit 16**

**Order Approving Stipulation to Dismiss the RB Bankruptcy Case**

**Exhibit 17**

**Notice of Withdrawal of Claim No. 5 in Meritage Bankruptcy Case**

**Exhibit 18**


**Notice of Withdrawal of Claim No. 6 in Meritage Bankruptcy Case**

**Exhibit 19**


**Notice of Withdrawal of Claim No. 13 in Barrett Bankruptcy Case**

**Exhibit 20**


**Notice of Withdrawal of Claim No. 14 in Barrett Bankruptcy Case**